IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEPHANE J. WANTOU SIANTOU, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 8:22-cv-01470-PX |
| DK ASSOCIATES, LLC, | * | |
| | * | |
| and | * | |
| | * | |
| DANIEL E. KENNEY, ESQ. | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | *** | |

MEMORANDUM OPINION

Plaintiff Stephane J. Wantou Siantou ("Wantou") brings this legal malpractice suit against Defendants DK Associates, LLC, a law firm, and attorneys Daniel E. Kenney ("the attorneys"). ECF No. 1. Currently pending before the Court is the attorneys' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 53. Also pending are Wantou's Second and Third Motion for Sanctions and a Corrected Motion to Strike Defendants' Reply Brief, or Alternatively, Motion for Leave and Extension of Time to File Surreply. ECF Nos. 52, 71 & 76.[1] All motions are fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the reasons that follow, the Court GRANTS the motion to dismiss, and DENIES Wantou's motions.

**I.    Background**

This dispute stems from Kenney's representation of Wantou in an employment discrimination suit against his former employer, CVS Rx Services, Inc (the "CVS Action"). *See*

---

[1] Because Wantou filed a corrected version of his motion to strike, the original motion to strike (ECF No. 68) is denied as moot.

ECF No. 29-1. In the CVS Action, Wantou had sued his former employer for retaliation and discrimination on the basis of race, national origin, and sex. *See Wantou v. CVS*, 17-0543 (D. Md. filed Feb. 23, 2017). As the litigation proceeded, CVS moved to dismiss some claims for failure to exhaust administrative remedies. ECF No. 29-1 at 6–7. The court granted the motion as to the national origin and sex discrimination claims, but denied dismissal as to race discrimination and retaliation. *Id.* at 7. After discovery, CVS successfully moved for summary judgment on the race discrimination claim, but as to the retaliation claim involving an April 2015 warning letter, the court denied summary judgment. *Id.* at 8.

On February 19, 2019, the CVS Action proceeded to trial on the retaliation claim. The court bifurcated trial, with the liability and actual damages phase heard first. Wantou prevailed, with the jury awarding him $125,000 in compensatory damages. *See* ECF No. 53-1 at 1. The court intended to try the punitive damages phase with the same jury, but ultimately postponed that phase. The punitive damages phase was tried in July with a different jury who found in CVS' favor and declined to award Wantou punitive damages. Because Wantou prevailed at trial, he, through counsel, moved for attorneys' fees to be paid by CVS. *See Wantou v. CVS*, ECF No. 172.

While the fee motion was pending, the attorneys moved to withdraw from representing Wantou, which the Court granted. ECF No. 29-1 at 19; ECF No. 53-1 at 23. The attorneys next moved to intervene so that they could collect any eventual award of attorneys' fees per the terms of the retainer agreement between the firm and Wantou. *See* ECF No. 53-1 at 24. Wantou objected to the attorneys receiving the entire fee, arguing that he believed he was entitled to his two-thirds share of the fee pursuant to the contingency provision in his retainer agreement with the attorneys. ECF No. 29-1 at 13. The retainer agreement states that Wantou would be entitled

2

to "68.25% of any proceeds obtained through settlement, verdict, award, or payment by CVS in the CVS Action." *Id.*  A separate attorneys' fee provision in the retainer agreement expressly states that "if Client is successful, the Attorney may also be entitled to an award of Attorney's fees." *Id.*  The Court ultimately granted the fee motion for the attorneys. *See Wantou v. CVS*, ECF No. 283.

Wantou next filed suit against the attorneys on May 16, 2022, originally in the Circuit Court for Montgomery County. *See* ECF No. 5.  The attorneys noted timely removal to this Court.[2] ECF No. 1.  Thereafter, Wantou filed a flurry of motions, the lion's share of which were denied. ECF No. 51.  Wantou also filed an Amended Complaint in which he asserted claims for legal malpractice (Count I); fraudulent misrepresentation (Count II); breach of contract (Count III); and breach of fiduciary duty (Count IV).  ECF No. 29-1.  Specifically, the Amended Complaint faults the attorneys for failing to obtain a copy of the formal charge of discrimination that Wantou had filed with the Prince George's County Human Rights Commission ("PGHRC"); had they done so, Wantou alleges, the attorneys could have defeated the lack of exhaustion arguments. *Id.* at 7.  The Amended Complaint also criticizes the attorneys for having "barely briefed" the summary judgment arguments on the race discrimination claim, failing to object to the postponement of the punitive damages phase, and "refus[ing]" to let Wantou testify at the punitive damages trial. *Id.* at 8–9.  Last, Wantou alleges that the attorneys' withdrawal from the CVS case prejudiced him, and that under the retainer agreement, he is entitled to a percentage of the attorneys' fee award. *Id.* at 6, 18–19.[3]

---

[2] The case was originally assigned to the Hon. Judge George J. Hazel and was transferred to this Court on March 15, 2023.

[3] The Amended Complaint also suggests the Court should remand the action for lack of jurisdiction. *See* ECF No. 29-1 at 4.  Because complete diversity of citizenship exists and the amount in controversy exceeds $75,000, the Court retains jurisdiction pursuant to 28 U.S.C. § 1332(a).

3

The attorneys move to dismiss the Amended Complaint entirely. ECF No. 53. Wantou asks the Court to either strike the attorneys' reply or to permit him to file a surreply (ECF No. 71), and for the Court to sanction the attorneys. ECF Nos. 52 & 76. The Court first turns to Wantou's motions.

## II.  Wantou's Motions

Wantou asks to file a surreply or alternatively that the attorneys' reply should be stricken because the attorneys raise new and "scandalous" arguments. ECF No. 71. A surreply is disfavored, to be granted only when the movant could not otherwise contest matters presented for the first time in the responsive pleading. *See* D. Md. Loc. R. 105.2(a); *see also Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003). Given that the attorneys raised no new arguments in the response, the request for surreply is denied.

As for striking the reply, Federal Rule of Civil Procedure 12(f) permits the Court to strike "any redundant, immaterial, impertinent, or scandalous matter." A motion to strike is also "generally viewed with disfavor," *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001), and "should be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Schultz v. Braga*, 290 F. Supp. 2d 637, 654–55 (D. Md. 2003) (citations omitted). Because the reply is squarely related to the dismissal arguments and otherwise free of "scandalous" or "impertinent" material, this request is also denied.

Wantou next resurrects his sanctions motion previously filed and denied. *See* ECF Nos. 46 & 51. The Court has been given no reason to reverse the prior decision and so this motion, too, is denied. Wantou filed a third motion for sanctions in which he reiterates his concerns

4

about the attorneys' reply brief. He also reasserts the same arguments previously raised in his first and second motions for sanctions. ECF No. 76. For the same reasons already discussed, the third sanctions motion is denied.

The Court next turns to the attorneys' motion to dismiss the Amended Complaint.

## II.  MOTION TO DISMISS

### A. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The Court must be able to deduce "more than the mere possibility of misconduct"; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *See Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd in relevant part*, 659 F. App'x 744 (4th Cir. 2016).

When reviewing a motion to dismiss, the Court may consider documents attached to the motion, provided that they are "integral to and explicitly relied on in the complaint, and when the [plaintiff does] not challenge the document's authenticity." *Wallace v. Moyer*, No. CCB-17-3718, 2020 WL 1506343, at *4 (D. Md. Mar. 30, 2020) (quoting *Zak v. Chelsea Therapeutics*

*Int'l, Ltd.*, 780 F.3d 597, 606 - 07 (4th Cir. 2015)); *see also Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). In addition, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Strickland-Lucas v. Citibank, N.A.*, 256 F. Supp. 3d 616, 623 (D. Md. 2017) (citation omitted).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Nevertheless, while it is true that a motion to dismiss "generally cannot reach the merits of an affirmative defense," it is also the case that "where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

Because Wantou proceeds pro se, the Court must give his pleadings an especially charitable reading so to let all potentially viable claims proceed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But "even a *pro se* complaint must be dismissed if it does not allege a 'plausible claim for relief.'" *Forquer v. Schlee*, No. RDB-12-969, 2012 WL 6087491, at *3 (D. Md. Dec. 4, 2012) (quoting *Iqbal*, 556 U.S. at 679). Ultimately, a complaint must "permit the court to infer more than the mere possibility of misconduct based upon its judicial experience and common sense." *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679) (internal quotes and alterations omitted).

### B. Legal Malpractice Claims

The attorneys first argue that any claims arising prior to May 2019 are time barred. ECF No. 53-1 at 9–16. Wantou responds that because he had not "discovered" much of the

6

misconduct until after the punitive damages trial in July 2019, the claims are timely.  ECF No. 59-1 at 7–19.

In Maryland, "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101.  This three-year requirement applies to Wantou's claims.  A claim will generally accrue at the time the wrong occurs.  *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131 (2011).  However, under the "discovery rule," an action is "deemed to accrue on the date when the plaintiff knew, or with due diligence, reasonably should have known of the wrong."  *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A.*, 152 Md. App. 698, 713 (2003).  The discovery rule protects plaintiffs "where it was not reasonably possible to have obtained notice of the nature and cause of an injury."  *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95 (2000).  The rule tolls limitations, however, only "until the time the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury."  *Id.* at 95–96.  Relatedly, a defendant's fraudulent conduct may delay accrual where the fraud itself conceals from the plaintiff the facts that would otherwise give notice of the claims.  Md. Code Ann., Cts. & Jud. Proc. § 5-203.  The period begins to run from "when a reasonable person would have used due diligence to investigate the fraud or the underlying injury."  *Supik*, 152 Md. App. at 715 (citing *Frederick Rd.*, 360 Md. at 98–99).

The attorneys contend that because Wantou filed his Complaint in May 2022, all alleged conduct predating May 2019 is time barred.  This includes any allegations concerning the August 2017 dismissal of the underlying discrimination claims on exhaustion grounds, the insufficient briefing on the race discrimination claim at the summary judgment stage, and the failure to object to a continuance of the punitive damages trial.  ECF 29-1 at 6–8.  Wantou responds that he

7

had not discovered any of the underlying facts supporting these claims until much later, after the discrimination case was over. ECF No. 53-1 at 11–12, 16. When viewing the Amended Complaint facts as true and most favorably to Wantou, his "discovery" argument, in large part, fails.[4]

With regard to the 2017 dismissal of his national origin and sex-based claims, Wantou knew or should have known of his attorneys' purported dereliction in failing obtain the PGHRC filing because Wantou himself had submitted the administrative claim. ECF No. 64 at 13. Accordingly, Wantou's knowledge of the administrative claim would have put him on notice of any failure by the attorneys to bring that fact to the Court's attention. The same is true for any summary judgment arguments. Although the Amended Complaint now faults the attorneys for giving short shrift to certain arguments, Wantou, as the plaintiff in the discrimination matter, would have known of the adverse impact such arguments had when he lost the motion. Accordingly, even on the most charitable reading of the Amended Complaint, all allegations that resulted in the Court extinguishing Wantou's discrimination claims before May 2019 are time barred.

Perhaps the punitive damages arguments compel a different result precisely because Wantou did not receive an adverse ruling on punitive damages until July 2019. However, all malpractice claims, including this one, also fail on the merits. To make plausible a legal malpractice case, the complaint must aver that during the course of a lawyer's representation, the lawyer breached the professional duty of care owed to the client which proximately caused the client damages. *Flaherty v. Weinberg*, 303 Md. 116, 128 (1985) (citing *Kendall v. Rogers*, 181

---

[4] This is also true to the extent that Wantou alleges that his continuing relationship with the attorneys, until their withdrawal in December 2019, tolls the limitations period. Generally, a client "is under no duty to make inquiries about the quality or bona fides of the services received, unless and until something occurs to make him or her suspicious," at which point accrual begins. *Frederick Rd.*, 360 Md. at 98.

Md. 606, 611–12 (1943)). Accordingly, the complaint must include sufficient facts to show that but for the lawyer's negligence, the client "probably would have prevailed in the underlying action," and so the client was harmed by the lawyer's substandard performance. *Berringer v. Steele*, 133 Md. App. 442, 473 (2000).

When viewing the allegations alone or collectively, none make plausible a professional malpractice claim. Starting with the attorneys' representation in the discrimination claims, the Amended Complaint amounts to a bald allegation that Wantou lost because his lawyer was not up to snuff. But without more, mere disagreement with an attorney's performance does not make plausible a malpractice claim. The same goes for Wantou's threadbare allegation that his attorneys failed to brief adequately the racial discrimination claim on summary judgment. *C.f. Hall v. Sullivan*, 272 F. App'x 284, 288 (4th Cir. 2008) (holding that legal malpractice cases typically require expert testimony to establish the standard of care and breach unless the acts are within the knowledge or experience of a layperson); *see also Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.*, 138 F. Supp. 2d 695, 701 (D. Md. 2001), *modified by Royal Ins. Co. of Am. V. Miles & Stockbridge, P.C.*, 142 F. Supp. 2d 676 (D. Md. 2001); *Briggs v. Cochran*, 17 F. Supp. 2d 453, 461 (D. Md. 1998), *aff'd*, 202 F.3d 257 (4th Cir. 1999). Plainly stated, the Amended Complaint provides no facts that make plausible that Wantou lost his discrimination claims because of the lawyers' substandard performance.

As to the attorneys' failure to object to continuing of the damages phase of trial, nothing in the Amended Complaint makes plausible that had his attorneys objected, the outcome would have been any different. No facts support that the judge would have decided *not* to continue the damages phase on objection from Wantou's attorneys or that the first jury would have reached any different conclusion than the second. Likewise, the attorneys' decision not to call Wantou as

9

a witness is soundly a matter of trial strategy "so long as an attorney acts in good faith and with knowledge of the law." *See Senez v. Carney*, No. 0223 Sept. term 2013, 2016 WL 1189129, at *8 (Md. App. Mar. 28, 2016). These kinds of strategic calls rarely, if ever, support a malpractice claim. *Id.* More to the point, nothing in the Amended Complaint makes plausible that not calling Wantou was the proximate cause of the adverse ruling.

As to the attorneys' post trial conduct, the decision to withdraw from the action does not constitute malpractice. This is especially so where counsel sought judicial permission and otherwise complied with the pertinent civil rules. *See Wantou v. CVS*, ECF Nos. 222 & 224. Equally deficient is the allegation that the attorneys somehow were derelict in failing to file a bill of costs prior to withdrawal. Putting to the side that the underlying docket demonstrates the falsity of this allegation, *see Wantou v. CVS*, ECF No. 164, the Court ultimately denied without prejudice the initial bill because the case was on appeal. *Wantou v. CVS*, ECF No. 228. After the case had been affirmed, Wantou could have, but did not, renew the motion. So, any harm stemming from the failure to file a final bill of costs is Wantou's own doing.

Last, Wantou's allegation regarding the attorneys' fee award is equally unavailing.[5] In discrimination cases, a prevailing party may seek to recover attorneys' fees from the losing party. *See Hairston v. Prince George's Cnty.*, No. CIV. PJM 09-3431, 2012 WL 5995451, at *2, n.2 & n.3 (D. Md. Nov. 28, 2012). In the CVS Action, Wantou's attorneys successfully so moved, and the Court ordered CVS to pay the attorney fee. *Wantou v. CVS*, ECF No. 263. Under the plain and unambiguous terms of the retainer agreement, it is the "attorney" who is "entitled to an

---

[5] The attorneys argue that the claim is likely barred as a compulsory counterclaim in the CVS Action, pursuant to Federal Rule of Civil Procedure 13. *See Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 219 (4th Cir. 2006); *Aaron Fine Arts v. O'Brien*, 244 F.R.D. 294, 296 (D. Md. 2007). Although the attorneys may be correct, the Court need not reach that issue.

10

award of Attorney's fees." *See* ECF No. 53-1 at 26. This provision also comports with the law, which distinguishes attorney fees from a compensatory damages award. *See Wolfe v. Routzahn*, 953 F. Supp. 2d 627, 637 (D. Md. 2013); *see also Wantou v. CVS*, ECF No. 281 at 2–3. Accordingly, because no facts make plausible that Wantou is entitled to any portion of the attorneys' fees, the claim fails.[6]

### C. Fraudulent Misrepresentation Claims

The Amended Complaint also obliquely refers to the attorneys' having defrauded Wantou. Reading the pleading most charitably, Wantou suggests that Kenney misrepresented himself as an experienced attorney. *See* ECF No. 29-1 at 20. Wantou also suggests that the lawyer somehow duped him out of his right to a portion of the statutory attorneys' fees awarded. *Id.* at 20–21. The fraud claim is patently insufficient.

Federal Rule of Civil Procedure 9(b) requires that a fraud claim be stated with particularity, to include specifying the false words or knowing omissions on which the plaintiff relief to his detriment. At a minimum, the complaint must "describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quotation marks and citation omitted). Fraud allegations that fail to comply with Rule 9(b) warrant dismissal under Rule 12(b)(6). *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).

The Amended Complaint, read most charitably to Wantou, is woefully deficient. *See Heritage Oldsmobile-Imports v. Volkswagen of Am., Inc.*, 264 F. Supp. 2d 282, 291 (D. Md.

---

[6] For the same reasons, the breach of contract and fiduciary duty claims also do not survive challenge. The fiduciary duty claim is in *pari materia* with the malpractice claim and compels the same result. *See Plank v. Cherneski*, 469 Md. 548, 599 (2020). Likewise, no facts support that the attorneys breached the retainer agreement when they received the fees to which they were entitled. *See Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001).

11

2003).  It identifies no specific representations or knowing omissions that support the fraud allegation as to Kenney.  Further, as to the allegation focused on the attorneys' fees award, nothing in the Amended Complaint demonstrates the falsity of the statement.  Thus, because the alleged misstatement is in fact true as a matter of law, the fraud claim must be dismissed.

### IV.   Conclusion

For the foregoing reasons, the Court GRANTS the motions to dismiss (ECF No. 53).  Because Wantou has already been given the opportunity to amend the Complaint in response to the attorneys' original dismissal motion, ECF No. 19, dismissal shall be with prejudice.  The Court also DENIES as MOOT the original motion to strike (ECF No. 68); DENIES the corrected motion to strike, or alternatively, for leave to file a surreply (ECF No. 71); DENIES the second motion for sanctions (ECF No. 52); and DENIES the third motion for sanctions (ECF No. 76).  A separate Order follows.


July 20, 2023                                              /s/
Date                                                      Paula Xinis
                                                          United States District Judge